CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

2/9/2026

LAURA A. AUSTIN, CLERK
BY: s/c *K̇emp*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| REBA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-00032 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SPECIALIZED LOAN SERVICING, | ) | By:  Hon. Thomas T. Cullen |
| LLC, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Reba Thompson ("Thompson") brought this action against Specialized Loan Servicing, LLC ("SLS"), Newrez, LLC ("Newrez"), d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), Equity Trustees, LLC ("Equity Trustees"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). (*See generally* Compl. [ECF No. 1-1].) Thompson alleges that defendants unlawfully foreclosed on her family home (the "Property") despite an oral agreement whereby SLS and Shellpoint promised not to foreclose in exchange for Thompson making six consecutive monthly payments. This matter is before the court on two motions to dismiss the complaint in its entirety—one filed jointly by SLS and Shellpoint[1] and the other by Freddie Mac. (SLS & Shellpoint Mot. Dismiss; Freddie Mac Mot. Dismiss [ECF Nos. 9, 12].) For the reasons discussed below, the court will grant Freddie Mac's motion in its

---

[1] Thompson's complaint and both motions to dismiss both state that Newrez does business as Shellpoint (both documents refer to the entity only as "Shellpoint"), and that Shellpoint acquired SLS, which is currently inactive with Virginia's State Corporation Commission (Compl ¶ 2 [ECF No. 2].) SLS and Shellpoint's motion to dismiss, however, indicates that they are filing the motion jointly as separate entities. (SLS & Shellpoint Mot. Dismiss at 1 [ECF No. 9].) This characterization does not affect the analysis of the merits of the motion to dismiss, but it is worth noting that, at some points in the discussion, actions that are attributed only to SLS apply equally to Shellpoint.

entirety and SLS and Shellpoint's motion as to Counts 1, 2, and 3. The court, however, will deny SLS and Shellpoint's motion as to Count 4. Because the court will decline to exercise supplemental jurisdiction over the remaining state-law claims, the court will remand this case back to state court for resolution of the fraud claim.

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Thompson's parents, Douglas M. Thompson and Louise N. Thompson ("Mr. and Mrs. Thompson"), owned the Property until their deaths in May and June of 2021, respectively. (Compl. ¶¶ 8–11.) After their deaths, Thompson and her sister, Lisa King, inherited the Property, and Thompson resides there. (*Id.* ¶ 12–14.)

Years before their deaths, Mr. and Mrs. Thompson encumbered the Property with a deed of trust dated August 31, 2011, to secure a promissory note, which was recorded in the Clerk's office of the Pittsylvania County Circuit Court. (*Id.* ¶ 15, Ex. A.) The note was originally payable to Embrace Home Loans, Inc. (*Id.*) On August 12, 2021, Mortgage Electronic Registration Systems, Inc., as nominee for Embrace Home Loans, assigned the deed of trust to Wells Fargo Bank, N.A. (*Id.* ¶ 17, Ex. B.) On March 7, 2023, Wells Fargo assigned the deed of trust to SLS. (*Id.* ¶ 18, Ex. C.) After Wells Fargo notified Thompson of the assignment to SLS, she contacted SLS "to arrange for payments to continue being made towards the lien, and to complete the successor in interest paperwork so that the Property and accompanying lien would be transferred" to her. (*Id.* ¶ 19–20). Thompson submitted the paperwork requested by SLS concerning the successor-in-interest process. (*Id.* ¶ 21.)

In one of her conversations with SLS, Thompson allegedly "reached an agreement regarding a payment plan[] to continue making payments and accomplish the successor in

interest process[.]" (*Id.* ¶ 23.) Thompson claims that SLS instructed her to make monthly payments of $929.99 per month and, in exchange, "SLS agreed that it would not foreclose on the Property, and upon the completion of approximately six consecutive payments," SLS would "affix the interest rate[] and submit paperwork to [Thompson] to accomplish the transfer of rights and obligations of the underlying deed of trust in her name." (*Id.* ¶ 24.) Thompson submitted six payments in the amount of $929.99 from May to October 2023, and SLS accepted those payments. (*Id.* ¶ 25–26.) But in November 2023, SLS refused Thompson's seventh payment and returned it to her. (*Id.* ¶ 27.) Between May and October 2023, Thompson did not receive any notices of default or indication that the alleged agreement was terminated. (*Id.* ¶ 28.) After reviewing land records, Thompson discovered that, during six-month period when she was making payments in accordance with her oral agreement with SLS, Equity Trustees was appointed as substitute trustee under the deed of trust. (*Id.* ¶ 29, Ex. E.) Thompson was never added as a successor in interest. (*See generally* Compl.)

In December 2023, BWW Land Group, LLC, on behalf of Equity Trustees, notified Thompson that the mortgage was in arrears by $30,345.97, that it was initiating foreclosure on the Property, and that a public auction would be held on February 28, 2024. (*Id.* ¶ 30, Ex. F.) The notice acknowledged that SLS had received and accepted Thompson's sixth monthly payment on October 12, 2023, the same day Equity Trustees was appointed as substitute trustee. (*Id.*) Freddie Mac purchased the Property at auction, and on May 15, 2024, Equity Trustees prepared a Substitute Trustee's deed conveying the Property to Freddie Mac. (*Id.* ¶

31, Ex. G.) Freddie Mac has since initiated unlawful detainer proceedings against Thompson in the Pittsylvania County General District Court. (*Id.* ¶ 32.)

Thompson filed the present action in the Pittsylvania County Circuit Court on May 20, 2025. (*See generally id.*) Thompson asserts four causes of action: equitable recission of foreclosure, against all four defendants (Count 1); breach of contract, against SLS and Shellpoint (Count 2); unjust enrichment, against SLS, Shellpoint, and Freddie Mac (Count 3); and fraud, against SLS and Shellpoint (Count 4). On June 24, 2025, Freddie Mac filed a notice of removal under 12 U.S.C. § 1452(f), and removed the case to this court. (ECF No. 1.) On July 15, 2025, SLS and Shellpoint jointly filed a motion to dismiss all counts. (ECF No. 9.) Thompson filed a response (ECF No. 10), and SLS and Shellpoint replied. (ECF No. 11.) Freddie Mac also filed a motion to dismiss the counts against it—Counts 1 and 3. (ECF No. 12.) Thompson filed a motion to strike Freddie Mac's motion to dismiss as untimely filed (ECF No. 13), which the court denied (ECF No. 17). The court gave Thompson 14 days thereafter to respond to Freddie Mac's motion, but she failed to do so. After a virtual hearing on January 14, 2026, both motions are ripe for disposition.

## II.   STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for

- 4 -

the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

### III.    <u>ANALYSIS</u>

Thompson asserts two claims against only SLS and Shellpoint: breach of contract (Count 2) and fraud (Count 4). Thompson asserts the remaining two claims—equitable rescission of foreclosure (Count 1) and unjust enrichment (Count 3)—against all defendants that filed motions to dismiss.

#### A.  <u>Plaintiff's Failure to Respond to Freddie Mac's Motion</u>

At the hearing, Freddie Mac argued that it should be dismissed as a party from this matter because Thompson did not respond to its motion to dismiss. Freddie Mac is correct that courts within this Circuit have acknowledged that a party's failure to respond to a motion to dismiss amounts to a concession to the moving party's arguments. *See, e.g.*, *Su v. Family First Home Healthcare, LLC*, No. 2:22-cv-368, 2024 WL 4101798, at *1 (E.D. Va. Apr. 19, 2024) ("If a party files a motion and the opposing party does not respond, the court may construe such a failure as conceding that the motion was meritorious, and as such, may grant the motion if the requested relief appears to be justified."); *Kelly v. Allstate Ins. Co.*, No. 1:22-cv-03155, 2024 WL 4581179, at *2 (D. Md. Oct. 25, 2024) ("Plaintiffs failed to respond to the Motion,

effectively conceding this Defendant's assertions and arguments."); *Wallace v. Dotson*, No. 7:24-cv-194, 2025 WL 972252, at *2 (W.D. Va. Mar. 31, 2025) ("Wallace did not respond to the motion to dismiss and partial motion to dismiss, so the court interprets his failure to respond as an acknowledgment that he agrees with defendants' arguments."). But the Fourth Circuit has cautioned that, even where a party does not challenge a motion to dismiss, "the district court nevertheless has an obligation to review the motion[] to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014). Accordingly, although Thompson conceded that she failed to respond, she made clear at the hearing that she does not concede that Freddie Mac's arguments are meritorious, so the court will resolve the motion on the merits.

B.  Count 2: Breach of Contract (against SLS and Shellpoint only)

To state a claim for breach of contract in Virginia, a plaintiff must establish: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *W. Insulation, LP v. Moore*, 316 F. App'x 291, 297 (4th Cir. 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). SLS and Shellpoint contest the first element; that is, they argue that Thompson "fails to establish an enforceable obligation." (SLS & Shellpoint Mot. Dismiss at 5.) Particularly, they contend that the alleged oral agreement between Thompson and SLS modifying the deed of trust falls under Virginia's statute of frauds as a contract related to the purchase of real estate. Because any contract (or amendment to a contract) relating to the sale of real estate must be in writing, the alleged oral amendment is unenforceable. (*Id.* at 6 (citing Va. Code Ann. § 11-2(6).) Thompson counters that the statute

does not apply because the contract was a "separate agreement" rather than a modification of the underlying mortgage. (Pl. Opp. Mot. Dismiss at 4.) SLS and Shellpoint have the better argument.

The agreement as alleged is an oral contract between SLS and the Plaintiff. According to Plaintiff, she agreed to "make monthly payments in the amount of $929.99 . . . and in exchange, [SLS] agreed that it would not foreclose on the Property, and upon the completion of approximately six consecutive payments, [SLS] would affix the interest rate, and submit paperwork to the Plaintiff to accomplish the transfer the rights and obligations of the underlying Deed of Trust to her name." (Compl. ¶ 24).The elements of a contract—offer, acceptance, and consideration, *see Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 39 (Va. 1995)—are met. The question, then, is whether that contract is one for "the sale of real estate." If it is, Virginia's statute of frauds requires that it be written to be enforceable. *See* Va. Code Ann. § 11-2(6).

The Supreme Court of Virginia and courts within this Circuit have repeatedly held that mortgage liens are "contracts related to the purchase of real estate" and that a "modification of a mortgage agreement must also be in writing to be enforceable." *Baird v. Fed. Home Loan Mortg. Corp.*, No. 3:15-cv-41, 2016 WL 6583732, at *3 (W.D. Va. Nov. 4, 2016); *see also Lindsay v. McEnearney Assocs., Inc.*, 531 S.E.2d 573, 576 (Va. 2000); *McInnis v. BAC Home Loan Servicing, LP*, No. 2:11-cv-468, 2012 WL 383590, at *8 n.5 (E.D. Va. Jan. 13, 2012), *R&R adopted*, No. 2:11-cv-468, 2012 WL 368282, at *1 (E.D. Va. Feb. 3, 2012); *Reynolds v. Wells Fargo Home Mortg.*, No. 7:19-cv-799, 2020 WL 3977934, at *5 (W.D. Va. July 14, 2020). But Thompson argues

that the agreement did not "change the terms of an underlying contract[,]" and was therefore not a modification. (Pl. Opp. Mot. Dismiss at 4.) The court disagrees.

In her complaint, Thompson states that she "reached an agreement [with SLS] regarding a payment plan, to continue making payments and accomplish the successor in interest process, transferring the obligations and rights of the *underlying Deed of Trust* in the name of [Thompson] as the borrower." (Compl. ¶ 23 (emphasis added).) Thompson further alleged that SLS agreed not to foreclose on the Property if she made six consecutive monthly payments. (*Id.* ¶ 24.) In addition to explicitly referencing the deed of trust—the existing contract enumerating the rights and obligations of both parties[2]—Thompson also describes a change to its material terms. The deed of trust provides that:

> Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.
> . . .
> Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. . . . Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less

---

[2] Even though Thompson had not assumed the mortgage and was therefore not the "Borrower" under the deed of trust, she was still bound to its terms as a Successor in Interest. The deed of trust defines a "Successor in Interest of Borrower" as "any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument." (Compl. Ex. A.) Under the deed of trust, SLS can exercise its rights against a Successor in Interest. (*See id.* ¶ 12.)

> than the amount then due, shall not be a waiver of or preclude
> the exercise of any right or remedy.

(Compl. Ex. A ¶¶ 1, 12.) The purported agreement changed the terms of the deed of trust.

SLS agreed to accept partial payments from Thompson and not foreclose on the property

despite its rights under the deed of trust to do just that—even after receiving partial payments.

Thus, the alleged oral agreement modifies the mortgage. These terms amount to an

"[e]xtension of time for payment or modification of amortization of the sums secured[,]" as

contemplated by the deed of trust itself. (Compl. Ex. A ¶ 12.) Ultimately, the alleged agreement

cannot be understood without encompassing the existing deed of trust. *Cf. Dodge v. CDW-*

*Gov't, Inc.*, 415 F. App'x 485, 488 (4th Cir. 2011) ("As such, interpretation of the 2004

Powerpoint presentation necessitates reference to the Handbook; only when combined with

the Handbook does that presentation form a complete policy. The 2004 presentation thus

functions as a *modification* to the Handbook's terms rather than a free-

standing contract offer."). Therefore, SLS and Shellpoint are correct that the oral contract here

is a modification of the terms of the deed of trust rather than a new and separate agreement.

Accordingly, the oral contract falls under the statute of frauds and is thus unenforceable unless

an exception applies.

Thompson argues that, if the statute of frauds covers the contract, the part-

performance exception to the statute of frauds applies. (Pl. Opp. Mot. Dismiss at 4.)[3] When

the statute of frauds requires that a contract be written, the part-performance exception—if it

---

[3] At oral argument, Thompson also raised the unbriefed argument that the alleged oral contract was an agreement to agree. But "it is 'well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable.'" *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F.Supp.2d 485, 490 (E.D. Va. 2002). Thus, if this was an agreement to agree, it is unenforceable.

applies—removes the contract from the writing requirement. *Rice v. Vitalink Pharmacy Servs., Inc.*, 124 F. Supp. 2d 343, 350 (W.D.N.C. 2000) (noting that "the doctrine of part performance . . . can take an otherwise unenforceable agreement from the domain of the Statute of Frauds.") To invoke the part performance exception, Thompson must show that:

> (1) the parol agreement relied on is certain and definite in its terms, (2) the acts provided in part performance refer to, result from, or were made in pursuance of the agreement, and (3) the agreement was so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation.

*Neal v. Neal*, No. 1:23-cv-00004, 2024 WL 4490871, at *3 (W.D. Va. Oct. 14, 2024) (quoting *Moorman v. Blockstock, Inc.*, 661 S.E.2d 404, 412 (Va. 2008)). In their reply brief, SLS and Shellpoint assert that Thompson is not entitled to the part-performance exception because she "failed to show the definitive nature of the agreement." The court agrees.

In Virginia, an oral agreement for the sale of land is certain and definite when the agreement defines the consideration exchanged by each party. *See Mann v. Mann*, 165 S.E. 522, at 524–25 (Va. 1932) (holding that the agreement was not certain and definite because it failed to specify the total amount of money the Plaintiff would pay the Defendant in consideration for a bequest of land in the Defendant's will); *Pair v. Rook*, 77 S.E.2d 395, 402 (Va. 1953) (holding that an agreement to leave property to another in their will was indefinite because the agreement did not specify *which* property the defendant promised to the plaintiff). In her Complaint, Thompson does not plausibly allege that the purported oral agreement was definite because its terms, as described, do not define the total value of the consideration owed by both parties, or their respective obligations once the payments were complete. The oral agreement, as alleged, states that Thompson would submit "*approximately* six consecutive

payments" of $929.99 per month and, in exchange, SLS "would not foreclose on the property" and upon the "completion of *approximately* six consecutive payments, Defendant SLS would affix the interest rate" and complete the successor-in-interest paperwork. (Compl. ¶ 24 (emphasis added).) The use of the word "approximately" indicates that the duration of the payment schedule in the agreement is undefined. Thus, the payment schedule and total value allegedly agreed upon by the parties are not definite. Likewise, the duration that SLS agreed to waive their right to foreclose on the property is not specified.

The agreement also fails to define the parties' obligations once Thompson completed the payment schedule and assumed the mortgage. Specifically, Thompson "does not allege the amount she would owe under the alleged agreement once she assumed the mortgage." (SLS and Shellpoint Reply Br. at 4). Further, the agreement does not specify if SLS's obligation not to foreclose on the property continued once Thompson assumed the mortgage or if, once Thompson assumed the mortgage, SLS would regain its right under the deed of trust to foreclose on the property. Thompson states simply that "SLS promised and assured [her] that as long as she made those payments, the Property would become hers, and she would be permitted to make the mortgage payments without risk of foreclosure or penalty." (Compl. ¶ 54.) But she fails to specify what the property "becom[ing] hers" would entail since she and her sister inherited it jointly (Compl. ¶ 12), or for how long she would be without risk of foreclosure while the mortgage remained in arrears. Accordingly, the part-performance

- 11 -

exception to the statute of frauds does not apply. The court will therefore dismiss Thompson's breach-of-contract claim.

C.  Count 3: Unjust Enrichment (against SLS, Shellpoint, and Freddie Mac)

To state a claim for unjust enrichment in Virginia, a plaintiff must show that she: (1) "'conferred a benefit' on a defendant; (2) the defendant 'knew of the benefit and should reasonably have expected to repay' the plaintiff; and (3) the defendant 'accepted or retained the benefit without paying for its value.'" *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 912 (W.D. Va. 2022) (quoting *T. Musgrove Constr. Co., Inc. v. Young*, 840 S.E.2d 337, 341 (Va. 2020)). Because unjust enrichment "is an implied contract action based upon the principle that one person . . . may not enrich himself unjustly at the expense of another[,] . . . the existence of an express contract 'covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment.'" *Id.* (quoting *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018)). As a result, a plaintiff cannot simultaneously recover on breach of contract and unjust enrichment if both claims cover the same subject matter. *Id.*

SLS and Shellpoint argue that the deed of trust, as an express contract, addresses the parties' obligations and is therefore the operative enforceable contract and bars Thompson's unjust-enrichment claim. (SLS & Shellpoint Mot. Dismiss at 9–10.) Freddie Mac advances an almost verbatim argument. (Freddie Mac Mot. Dismiss at 12.) Though the defendants correctly state the law, dismissal for that purpose is not required at this stage. The "prohibition on dual recovery does not preclude a plaintiff from pleading equitable theories of relief as alternatives to contract recovery." *Eagle Paper Int'l, Inc. v. Cont'l Paper Grading Co.*, 726 F. Supp. 3d 541, 552 (E.D. Va. 2024) (quoting *Colonna's Shipyard, Inc. v. Coastal Cement Corp.*, No. 2:22-

cv-395, 2023 WL 3321734, at *3 (E.D. Va. May 9, 2023)). "Thus, a plaintiff may plead alternative claims for breach of contract and unjust enrichment 'when the applicability or enforceability of the contract is in dispute.'" *Id.* (quoting *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 810 (E.D. Va. 2017)); *see also* Fed. R. Civ. P. 8(d)(2) (allowing a party to plead claims in the alternative). SLS and Shellpoint have directly disputed the enforceability of the oral agreement that, if valid, would modify the deed of trust, (*see* SLS & Shellpoint Mot. Dismiss at 5–6) and the court has dismissed Thompson's breach-of-contract claim on that basis. Therefore, it was appropriate at this stage for Thompson to assert both breach-of-contract and unjust-enrichment claims, and it is appropriate for the court to address both on their merits.

More convincingly, the defendants argue that Thompson failed to plead the elements of unjust enrichment. As a threshold argument, SLS and Shellpoint contend that "because the alleged oral agreement to modify the mortgage is unenforceable, . . . the only enforceable agreement . . . is the deed of trust and note[,]" which state that SLS had the right to accept partial mortgage payments and still foreclose on the property. (SLS & Shellpoint Mot. Dismiss at 8.) Accordingly, SLS and Shellpoint argue that Thompson failed to allege the third element of unjust enrichment; namely, she fails to demonstrate "how SLS accepting payments . . . that were insufficient to bring the mortgage current" and "how SLS exercising its right under the deed of trust by foreclosing on the property" were inequitable. (SLS & Shellpoint Mot. Dismiss at 9.) In reply, Thompson reiterates that SLS made "a subsequent promise, a separate contract . . . to not take any adverse action on the property[,]" rendering the underlying deed of trust "irrelevant" as to this claim. (Pl. Opp. Mot. Dismiss at 5.) Thompson then argues that she

adequately pleaded inequity because SLS "chose to negotiate" and "enter into a separate agreement with her[,]" but then kept her payments and initiated foreclosure despite the agreement's terms. (*Id.*)

As previously discussed, the oral contract between the parties is unenforceable because it falls under the statute of frauds. (*See supra* Part III.B.) But even if the oral contract was enforceable, it was a modification to the deed of trust; therefore, the deed of trust is still the operative agreement because it governs the rights and obligations of both parties.

SLS and Shellpoint are also correct that the third element of unjust enrichment—inequity—is not adequately pleaded here because, even with the alleged oral modification, they were still entitled to foreclose on the Property after accepting partial mortgage payments. Specifically, the deed of trust states that:

> Lender may return any payment or partial payment if the payment or partial payments are Insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, *without waiver of any rights hereunder* or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.
> . . .
> *Extension of the time for payment or modification of amortization of the sums* secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower *shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. . . . Any forbearance by Lender in exercising any right or remedy* including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, *shall not be a waiver of or preclude the exercise of any right or remedy.*

(Compl. Ex. A ¶¶ 1, 12 (emphasis added).) These terms make clear that modifications such as the one here may occur and would not impair the lender's the right to foreclose even after

accepting partial payments. Therefore, Thompson has not adequately pleaded inequity where SLS and Shellpoint exercised a right and retained a benefit to which they were entitled. *See Seale & Assocs., Inc. v. Ingersoll-Rand Co.*, No. 1:15-cv-01282, 2016 WL 4435083, at *9 (E.D. Va. Aug. 16, 2016) (holding that none of the proceeds Seale received were inequitable because Seale was entitled to them); *cf. Walker v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-cv-607, 2016 WL 3746577, at *6 (W.D.N.C. June 16 2016) (applying North Carolina law, noting that "whether [Defendant] was entitled to receive the benefit . . . is the determinative issue" and holding that the "Plaintiffs failed to allege how Defendants were not entitled to receive the security interest, which Defendants obtained in exchange for the loan[.]"), *R&R adopted*, No. 3:15-cv-607, 2016 WL 3741873, at *1 (W.D.N.C. July 11, 2016).

Turning to Freddie Mac: it argues that Thompson's unjust-enrichment claim pertaining to it fails at the first element. Specifically, Freddie Mac contends that "the benefit [Thompson] alleges [it] received—the Property—was not a benefit [she] conferred onto [it]" because Freddie Mac bought the Property as the highest bidder at a public auction. (Freddie Mac Mot. Dismiss at 10.) The court agrees.

It is true that courts within this Circuit have allowed unjust-enrichment claims to proceed where the benefit a defendant received was indirect. *See, e.g., Blackburn v. A.C. Israel Enters.*, No. 3:22-cv-146, 2023 WL 4719884, at *34 (E.D. Va. July 24, 2023); *Hengle v. Asner*, 433 F. Supp. 3d. 825, 896 (E.D. Va. 2020). But those cases are not analogous. *Blackburn* and *Henle* were related cases arising out of a purported scheme where "non-tribal payday lenders and their business partners use[d] Native American tribes to originate illegal loans[.]" *Blackburn*, 2023 WL 4719884, at *2. In both cases, the court held that, even though the

plaintiffs directly paid only the tribal entities, the unjust-enrichment claim against the non-tribal defendants could move forward because the plaintiffs alleged that those defendants received a substantial portion of the revenue from the lending scheme. *Blackburn*, 2023 WL 4719884, at \*33; *Hengle*, 433 F. Supp. 3d at 896. This matter is more similar to the case that the *Blackburn* and *Hengle* court distinguished, *Hyundai Emigration Corp. v. Empower-Visa, Inc.*, 2009 WL 10687986, at \*8 (E.D. Va. June 17, 2009), which held that "the plaintiff 'fail[ed] to allege that it paid [the individual defendant] directly or that [the individual defendant] received any portion of the payments [that the plaintiff] made to Empower.'" *Hengle*, 433 F. Supp. 3d. at 896 (quoting *Hyundai Emigration Corp.*, 2009 WL 10687986, at \*8) (alterations in original).

Here, Thompson does not allege that Freddie Mac received any portion of the six payments she made to SLS. Rather, the benefit Thompson alleges that Freddie Mac received—the Property—was not conferred *by her* because Freddie Mac purchased it at the foreclosure auction. Moreover, Thompson's allegation in her complaint that Freddie Mac "was aware, or should have been aware, of [her] underlying agreement with . . . SLS and Shellpoint prior to acquiring the Property" (Compl. ¶ 72) is wholly conclusory. She does not allege any facts to support her allegation that Freddie Mac knew or should have known of the alleged oral agreement between her and SLS that occurred approximately a year before the foreclosure auction. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) ("'[M]ere conclusory statements' are not enough to demonstrate facial plausibility." (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009))) (alteration in

original).[4] The court cannot impute knowledge of the alleged oral agreement onto Freddie Mac without any facts supporting that allegation. Accordingly, the court will dismiss Thompson's unjust-enrichment claims as to all parties.

D. Count 4: Fraud (against SLS and Shellpoint only)

SLS and Shellpoint argue that Thompson's fraud claim is barred by the economic loss rule (SLS & Shellpoint Mot. Dismiss at 12), which provides that "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts," not torts. *Waytec Elecs. Corp. v. Rohm & Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 491 (W.D. Va. 2006) (quoting *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004)).[5] Alternatively, SLS and Shellpoint argue that, if the economic loss rule does not apply, Thompson did not meet the heightened pleading standard for fraud claims.

---

[4] In another part of her complaint, Thompson states that "Freddie Mac backed the underlying Deed of Trust, as evidenced by the language contained on the bottom of each page of said document . . . and has possessed the requisite information and knowledge to be aware of the underlying mortgage, [Thompson's] agreement with . . . SLS, and the payments made by [Thompson] pursuant to said Agreement." (Compl. ¶ 42.) She does not explain how Freddie Mac being listed at the bottom of the deed of trust (*see* Compl. Ex. A) establishes that Freddie Mac would have known of the oral agreement between Thompson and SLS, nor does she provide any further information as to Freddie Mac's purported knowledge. Consequently, this statement is also "mere[ly] conclusory." *Wicomico Nursing Home*, 910 F.3d at 750.

[5] In their reply brief, SLS and Shellpoint assert that, because Thompson did not address their economic loss argument in her brief, she conceded the issue, and the court should dismiss her fraud claim on that basis. (SLS & Shellpoint Reply Br. at 6–7.) As noted above (*see supra* § III.A), a party's failure to address an issue in their opposition brief ordinarily amounts to a concession. But "a plaintiff's failure to respond to each and every argument raised by a defendant does not automatically entitle that defendant to dismissal; the [c]ourt must still independently assess the sufficiency of the Complaint to determine whether dismissal is appropriate." *Byers v. City of Richmond*, 746 F. Supp. 3d 275, 302 n.17 (E.D. Va. 2024) (cleaned up). Therefore, the court will address the merits of this issue.

(SLS & Shellpoint Mot. Dismiss at 10 (citing Fed. R. Civ. P. 9(b) (requiring a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake")).)[6]

The economic loss rule bars a tort claim for fraud where the "fraudulent conduct relates to contracts[.]" *Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F. Supp. 2d 153, 167 (W.D. Va. 2011) (citing *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988)). Accordingly, to determine whether the economic loss rule applies, a court must inquire into "'whether a cause of action sounds in contract or tort,' by ascertaining 'the source of the duty violated.'" *Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741, 750 (E.D. Va. 2006) (quoting *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)). Courts in this Circuit have held that "[c]laims for actual fraud, as opposed to constructive fraud, are tort claims and are exempt from the economic loss rule" because "an actual fraud claim relies on the duty to be truthful, which is a duty imposed by law, not by contract." *Evanston Ins. Co. v. Sivam, Inc.*, No. 2:13-cv-135, 2013 WL 12096523, at *3 (E.D. Va. Aug. 19, 2013) (citing *Va. Transformer Corp. v. P.D. George Co.*, 932 F. Supp. 156, 162 (W.D. Va. 1996)); *see also Kruglyak v. Home Depot U.S.A, Inc.*, 750 F. Supp. 3d 644, 659 (W.D. Va. 2024); *Aukhert v. Pritt Inv. Partners, LLC*, No. 1:22-cv-00665, 2025 WL 817600, at *4 (E.D. Va. Mar. 14, 2025). Actual fraud in Virginia requires plaintiffs to establish: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting

---

[6] Virginia has the same heightened pleading standard for fraud claims. *See Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 782 (Va. 1996); *Bennett v. Lundh*, 916 S.E.2d 356, 360 n.6 (Va. App. 2025) (tracing the historical roots of the heightened pleading standard for fraud in Virginia). Under this heightened pleading standard, "'the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' . . . Fraudulent intent may be alleged generally." *United States ex rel. Miller v. Reckitt Benckiser Grp. PLC*, 698 F. Supp. 3d 889, 908–09 (W.D. Va. 2023) (first quoting *United States ex rel. Radcliffe v. Purdue Pharma, L.P.*, No. 1:05-cv-00089, 2009 WL 161003, at *1 (W.D. Va. Jan. 25, 2009), then citing Fed. R. Civ. P. 9(b)).

damage to the party misled." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999)). In contrast, a claim for constructive fraud requires a showing that the false representation was made innocently or negligently. *Carlucci v. Han*, 886 F. Supp. 2d 497, 527 (E.D. Va. 2012).

The court's inquiry into whether a fraud claim sounds in contract (*i.e.* constructive fraud) or tort (*i.e.* actual fraud) "begins with the allegations contained in the Complaint." *Barnette,* 429 F. Supp. 2d at 750. In her Complaint, Thompson alleged that SLS and Shellpoint "falsely misrepresented to [her] that, upon receipt of six consecutive payments from [her] in the amount of $929.99, . . . SLS and Shellpoint would not foreclose on the Property and would complete the successor [in] interest process[.]" (Compl. ¶ 75.) Then, she asserted that "[d]espite making these promises to [Thompson], and accepting six of her seven payments, Defendants SLS and Shellpoint *intentionally and knowingly* foreclosed on the Property[.]" (*Id.* ¶ 77 (emphasis added).) Finally, she stated that her "sole reason for submitting each payment was out of reliance upon the misrepresentations *intentionally* made by Defendants SLS and Shellpoint, as she was led to believe that she accrued an agreed[-]upon plan which would result in her maintaining her family home." (*Id.* ¶ 78 (emphasis added).)

Taken together, these allegations allude to intentional, rather than negligent, fraud and therefore sound in tort rather than contract. *Contrast Krughak*, 750 F. Supp. 3d. at 659 (holding that plaintiff's allegation that Home Depot failed "to deliver the correct tub is a breach of Home Depot's" contractual duty, rendering the plaintiff's claims "nothing more than allegations of negligent performance of contractual duties."); *see also Evanston Ins. Co.*, 2013 WL 12096523, at *3 ("Virginia law distinguishes between a statement that is false when made and

a promise that becomes false only when the promisor later fails to keep his word." (quoting *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th Cir. 1990))).

In their reply brief, SLS and Shellpoint argue that Thompson failed to plead the intent to mislead and damages elements of actual fraud. (SLS & Shellpoint Reply Br. at 7–8.) They are incorrect. At this stage, Thompson sufficiently alleges these two elements. In her Complaint, Thompson states:

> 27. When the plaintiff submitted a seventh payment in November 2023, the payment was refused by Defendant SLS without reason or notice, and returned to [Thompson].
>
> 28. During this period of time, May 2023 through November 2023, [Thompson] received no notices of default, or indication that the agreement she entered into with SLS was terminated or validated.
>
> 29. After reviewing land records, it has been discovered that during this time, Defendant Equity Trustees was appointed as substitute trustee under the Deed of Trust[.] …
>
> 30. In December 2023, [Thompson] received a notice from BWW Land Group, LLC, on behalf of Defendant Equity Trustees claiming to be initiating a foreclosure upon the Property. In said notice, it is acknowledged that Defendant SLS received and accepted [Thompson's] payment for $929.99 on October 12, 2023, the same date Defendant Equity Trustees was officially appointed as Substitute Trustee[.] …

(Compl. ¶¶ 27–30.) Additionally, Thompson alleged that despite "making . . . promises" to her "and accepting six of her seven payments, Defendants SLS and Shellpoint intentionally and knowingly foreclosed on the Property[.]" (*Id.* ¶ 77.)

Although Thompson did not specifically state that SLS and Shellpoint intended to mislead her at the time they entered into the alleged agreement, her statements as to SLS's and Shellpoint's conduct sufficiently allege intent—namely, that SLS appointed a substitute trustee

- 20 -

on the same day that Thompson made her sixth payment, and that the substitute trustee notified Thompson that it was initiating a foreclosure shortly after SLS rejected a seventh payment from Thompson. These alleged actions plausibly establish that, while Thompson was making—and SLS and Shellpoint were accepting—these payments, SLS and Shellpoint were taking steps to foreclose on the Property despite their alleged promise not to do so. The court can draw a reasonable inference from this alleged course of conduct that SLS and Shellpoint intended to mislead Thompson when they entered into the agreement. Because "[f]raudulent intent may be alleged generally" even under the heightened pleading standard for fraud, *United States ex rel. Miller v. Reckitt Benckiser Grp. PLC*, 698 F. Supp. 3d 889, 908–09 (W.D. Va. 2023), and because the court "only tests the sufficiency of [a plaintiff's] allegations in the Complaint" at the motion to dismiss stage, *SS Richmond LLC v. Harrison*, 640 F. Supp. 3d 453, 481 (E.D. Va. 2022), Thompson's allegations adequately allege the intent-to-mislead element.

For similar reasons, Thompson sufficiently alleges damages. "Under Virginia law, a plaintiff alleging fraud 'must prove damages which are caused by his detrimental reliance on a defendant's material misrepresentation.'" *Hazaimeh v. U.S. Nat'l Bank Ass'n*, 94 F. Supp. 3d 741, 750 (E.D. Va. 2015) (quoting *Murray v. Hadid*, 385 S.E.2d 898, 903 (Va. 1989)). In her Complaint, Thompson states that she suffered "financial damages in the amount of $5,579.94 for payments submitted and retained by these Defendants" and "additional damages surrounding the potential loss of her home" (which is valued at $351,000), in addition to attorney's fees and legal expenses she as incurred and will incur in the future. (Compl. ¶¶ 79–81.) Thompson also links those damages to SLS and Shellpoint's alleged misrepresentation when she states that her "sole reason for submitting each payment was out of reliance upon

the misrepresentations intentionally made by Defendants SLS and Shellpoint, as she was led to believe that she accrued an agreed upon plan which would result in her maintaining her family home." (*Id.* ¶ 78.) Because "skeletal allegation[s] of damages" are sufficient to survive a motion to dismiss, Thompson satisfied the damages element at this stage. *See Hazaimeh*, 94 F. Supp. 3d at 750 (quoting *Matanic v. Wells Fargo Bank, N.A.*, No. 3:12-cv-472, 2012 WL 4321634, at *6 (E.D. Va. Sep. 19, 2012) (holding that plaintiff adequately pleaded damages by alleging that, in reliance on the defendant's misrepresentation, he did not obtain counsel to stop the foreclosure)).

E.   Count 1: Equitable Rescission of Foreclosure (as to all defendants)

Finally, Thompson has not stated a claim for equitable rescission of foreclosure because rescission "is not a cause of action in itself, but rather a remedy." *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897, 901 (Va. 2020). "Remedies . . . do not exist in the abstract; rather, they flow from and are the consequence of some wrong." *Devine v. Buki*, 766 S.E.2d 882, 883 (Va. 2015) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). Because equitable rescission, as a remedy, "must be tailored to a violation," *Bacon*, 475 F.3d at 638, it cannot be an independent cause of action. Therefore, it would be more appropriate to address equitable rescission as a possible remedy if Thompson prevails at trial, and the court will therefore dismiss this count as to all defendants.

## IV.   CONCLUSION

For the reasons discussed above, the court will grant Freddie Mac's motion to dismiss in its entirety and dismiss Freddie Mac as a party. As to SLS and Shellpoint, the court will grant

their motion to dismiss with respect to Counts 1, 2 and 3. The court, however, will deny SLS and Shellpoint's motion to dismiss as to Count 4.

Finally, because the court has dismissed Freddie Mac as a party, there are no longer any live claims over which this court has original jurisdiction.[7] The court will decline to exercise its supplemental jurisdiction over the remaining claim, and this matter will be remanded to the Pittsylvania County Circuit Court. *See* 28 U.S.C. § 1367(c)(3).

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 9th day of February, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[7] With Freddie Mac as a party, this court had federal question jurisdiction under 12 U.S.C. § 1452(f)(2). Without Freddie Mac, the court does not have subject-matter jurisdiction. There is no federal question jurisdiction because Thompson brings only state-law claims, and there is no diversity jurisdiction because the remaining parties are all citizens of Virginia or Virginia limited liability companies. (*See* Compl. ¶¶ 1–5.)